**SO ORDERED.**

**SIGNED this 29th day of October, 2012.**



Dale L. Somers
United States Bankruptcy Judge
_____

Opinion Designated for Electronic Use, But Not for Print Publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:
RICHARD LEE SCHUCKENBROCK,   CASE NO. 10-42327-12
LENICE MAE CRAWFORD,   CHAPTER 12

DEBTORS.

**OPINION REJECTING THE DEBTORS' ARGUMENT THAT,
UNDER THEIR PLAN, A RISK-FREE DISCOUNT RATE ADDED TO
THEIR DEFERRED PAYMENTS TO THE CLASS OF UNSECURED
CREDITORS WOULD BE SUFFICIENT TO SATISFY § 1225(a)(4)**

This matter comes before the Court for a ruling on the discount rate that must be applied to the Debtors' proposed deferred payments to Class 6 under their Chapter 12 plan, the class of general unsecured creditors, in order to satisfy the requirement of § 1225(a)(4) that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate were liquidated under chapter 7." The Debtors appear by counsel David R. Klaassen. The Chapter 12 Trustee, Eric C.

Rajala, objected to the Debtors' plan, and appears on his own behalf. The Court has reviewed the relevant materials and is now ready to rule.

**Facts**

The Debtors filed their Chapter 12 petition on December 31, 2010, and on January 25, 2011, they filed their schedules. On Schedule F, they listed 16 creditors holding unsecured claims totaling just over $80,000. However, only 11 creditors have filed proofs of claim showing themselves to be completely unsecured, asserting debts totaling over $60,000. One creditor filed a proof of claim for a secured claim of just over $9,000 and an unsecured claim of just over $18,000. The only other creditor to file a secured claim asserted its claim for almost $290,500 was fully secured. Thus, there are presently approximately $78,000 in allowed unsecured claims in this case.

The Debtors filed a Chapter 12 plan dated December 5, 2011. In it, they proposed to pay administrative claims, one priority tax claim, two secured claims, and then, from any portion of their disposable income that exceeds the amounts needed to pay the previously-listed claims, to pay Class 6, their unsecured claims, minus the Trustee's percentage fee. They stated a minimum amount they would pay to the Trustee for this class of unsecured claims, which they have now agreed to increase to $30,000. This is not enough to pay the unsecured claims in full. Because the Debtors are not proposing to pay the $30,000 on the effective date of the plan but instead at some unspecified future date, the Trustee objected that the Debtors must pay interest on the $30,000 so its value "as of the effective date of the plan" would not be less than $30,000. The parties now

agree that a discount rate must be applied (or, in effect, that interest must be paid) on the $30,000 so that the present value of the money the Debtors will pay the Trustee in the future for the class of unsecured creditors will equal the $30,000 liquidation value of the nonexempt assets that would be available in a Chapter 7 case to be distributed on those claims. But the parties contest the rate at which interest should accrue until the Debtors have paid the required amount to the Trustee.

Relying on the plurality opinion in *Till v. SCS Credit Corporation*,[1] the Trustee argues the Debtors must pay interest based on a published prime rate, plus an upward risk adjustment. He says in a footnote that the discount factor (or interest rate) that the Chapter 13 Standing Trustees for the District of Kansas are currently using is 4.75%. The Debtors ask the Court to adopt the view accepted by the concurring opinion in *Till*,[2] which concluded the relevant statute only requires debtors to pay a riskless rate, with no upward adjustment for the risk that they won't complete their plan. Although the concurring opinion said "the prime rate" most closely approximates the riskless rate for money, the Debtors contend that because U.S. Treasury securities are backed by the full faith and credit of the federal government, they represent a riskless interest rate, and because the Debtors' plan is to run no less than 36 nor more than 60 months, "the rate of the Five-Year Treasury Constant Maturity Treasury securities most closely fits" their

---

[1] 541 U.S. 465, 468-85 (2004).

[2] *Id*. at 485-91.

3

plan.[3]

**Discussion**

For Chapter 12 cases, § 1225(a)(4) imposes a plan confirmation requirement commonly known as the best interests of creditors test. Simply stated, this test requires a Chapter 12 plan to provide for the holders of allowed unsecured claims to receive property worth at least as much under the plan as they would receive if the bankruptcy estate were instead liquidated under Chapter 7 and they were paid with liquidation proceeds. And the provision requires the Court to compare the "value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim" to the liquidation value, as of the effective date of the plan, that would be paid on such claims to determine whether the test is met. The quoted language means that plan payments to be made in the future must be discounted to their present value before comparing them to the value a Chapter 7 liquidation would pay on each unsecured claim.[4] Because accurately discounting future payments to their present value can only be done when the exact dates and amounts of the payments are known and debtors are highly unlikely to make the payments to the case trustee on exactly the projected dates and in exactly the projected amounts, the present value determination is normally made by the mathematically equivalent process of applying an interest rate to a specific amount

---

[3] Dkt. 122 at 9.

[4] *See* 8 *Collier on Bankruptcy*, ¶ 1225.02[4] at 1225-8 to 1225-9 (Alan N. Resnick & Henry J. Sommer, eds.-in-chief, 16th ed. 2012).

4

that is to be paid to the class of unsecured claims.[5] The interest rate can then be applied to the amount remaining to be paid until the debtor actually makes each payment, thus assuring that the required present value is actually paid to the class.

The language requiring a present value determination of plan payments to be made in the future also appears in § 1225(a)(5)(B)(ii), which provides an option to pay a secured claim through future payments having a present value not less than the allowed amount of the claim. The same present value language applies to plans in Chapter 13 cases as well, with § 1325(a)(4) covering unsecured claims and § 1325(a)(5)(B)(ii) covering secured claims, so case law interpreting either of those provisions should be just as helpful in construing the Chapter 12 provisions. Consequently, although *Till* was interpreting § 1325(a)(5)(B)(ii), the decision also controls interpretations of § 1225(a)(4) to the extent a controlling conclusion can be drawn from the case. But *Till*'s precedential value is less than might be hoped because no single construction of the present value language was approved by more than four members of the Supreme Court.

The Trustee suggests the Court should apply the prime-rate-plus-risk-adjustment approach that the four-justice plurality adopted in *Till*. The plurality described this approach as starting with "the national prime interest rate, reported daily in the press, which reflects the financial market's estimate of the amount a commercial bank should charge a creditworthy customer to compensate for the opportunity costs of the loan, the risk of inflation, and the relatively slight risk of default," and adding a risk adjustment

---

[5]*See* 8 *Collier on Bankruptcy*, ¶1225.03[4][c].

5

because "bankrupt debtors typically pose a greater risk of nonpayment than solvent commercial borrowers."[6] The Debtors argue the *Till* plurality's opinion is not binding precedent, and ask the Court instead to adopt the approach accepted by Justice Thomas in his concurring opinion, namely, that the statute requires no adjustment in the present value calculation for the risk of nonpayment, and only a riskless interest rate is required.[7]

While it may be true that the plurality's approach to determining the proper present-value interest rate is not binding because neither Justice Thomas nor the four-member dissent agreed with it, the Court believes the Debtors have overlooked one facet of the *Till* opinions that undoubtedly is binding. As Justice Thomas himself noted: "Respondent argues, and the plurality and the dissent agree, that the proper interest rate must also reflect the risk of nonpayment."[8] That is, both the plurality and the dissent, a total of eight justices, rejected Justice Thomas's theory that the present-value language only requires a riskless interest rate. Therefore, *Till* is binding authority for the rejection of a risk-free rate, and this Court is not allowed to adopt one.

Neither side in this dispute has presented any evidence on the discount rate question. The Trustee did not state in his brief what he thinks the applicable prime rate is or what an appropriate risk adjustment would be, although he said in a footnote that a *Till*-rate discount rate of 4.75% is currently being used in Chapter 13 cases in this

---

[6]541 U.S. at 478-80.

[7]*Id*. at 485-91.

[8]*Id*. at 487.

6

Case 10-42327    Doc# 129    Filed 10/29/12    Page 6 of 7

District, and in his conclusion, he asked the Court to require the Debtors to pay that rate on the $30,000 they are to pay to the class of the general unsecured creditors through their plan.

Under the circumstances, all the Court is prepared to do at this point is reject the Debtors' argument that a risk-free discount or interest rate would be sufficient to satisfy § 1225(a)(4). The Debtors are hereby given 21 days from the entry of this opinion to advise the Trustee and the Court whether, given this ruling, they are willing to accept the interest rate proposed by the Trustee, or instead wish to participate in an evidentiary hearing about the rate the Court should apply.

# # #